UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA PERRY,<br><br>    Plaintiff,<br><br>    v.<br><br>FLOSS BAR, INC., *et al.*,<br><br>    Defendants. | Case No. 20-cv-05609-SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE; TRANSFERRING VENUE TO THE SOUTHERN DISTRICT OF NEW YORK; AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. Nos. 31, 33 |

On January 15, 2021, the Court held a hearing on defendants' motion to transfer venue to the Southern District of New York and plaintiff's motion for preliminary injunction. For the reasons set forth below, the Court GRANTS defendants' motion to transfer venue, TRANSFERS this action to the Southern District of New York, and DENIES plaintiff's motion for preliminary injunction without prejudice to renewal in the transferee court.

**BACKGROUND**

**I.     Factual Background**

Plaintiff Joshua Perry has filed this lawsuit against defendants Floss Bar, Inc. ("Floss Bar"), Floss Bar CEO Eva Sadej, and Floss Bar Advisor Stuart Allan. Floss Bar is a Delaware corporation with its primary place of business in New York. Notice of Removal (Dkt. No. 1); Sadej Decl. ¶¶ 14-15, 20 (Dkt. No. 31-2). In April 2019, Perry was hired to be president of Floss Bar as a part of defendants' acquisition of Perry's company, Onsite Service USA Holding, Inc., a Texas corporation, which was owned by XSite Health Ltd., a company formed under the laws of the Republic of Ireland. Compl. ¶ 26 (Dkt. No. 1-1); Sadej Decl. ¶ 3.

On or about December 9, 2019, Floss Bar told Perry that it was putting him on a paid suspension through the end of the year, and soon thereafter, Floss Bar informed Perry that it was suspending him without pay, "with no end date or approximate end date given." Compl. at ¶¶ 9-10. Plaintiff claims that following his suspension he has received no salary or other compensation, and that he has been constructively discharged from the company without receiving severance pay. *Id.* at ¶¶ 10, 13. Plaintiff also alleges that he is prevented from finding other work in his field of "mobile dentistry" by the terms of a "Non-Competition and Non-Solicitation Agreement" that he signed in April 2019 at the outset of his employment with Floss Bar. *Id.* at ¶¶ 181-87.

The "Non-Competition and Non-Solicitation Agreement" is one of several agreements that Perry signed in conjunction with the acquisition of Perry's company and Perry becoming a Floss Bar employee.[1] Defendants assert that the agreements between Floss Bar and Perry were negotiated and signed in New York, *see* Sadej Decl. ¶ 6, while Perry states that some negotiations occurred in San Francisco and also while he was in Amsterdam. Perry Decl. ¶¶ 6-7 (Dkt. No. 38). The Non-Competition and Non-Solicitation Agreement provides, *inter alia*, that "[w]hile the Employee is employed by the Company and for a period of two (2) years after the termination or cessation of such employment for any reason, the Employee will not directly or indirectly . . . engage or assist others in engaging in any business or enterprise . . . that is competitive with the Company's business . . . ." Sadej Decl. Ex. 1-A at ¶ 1 (Dkt No. 31-4). The agreement also states that the agreement "shall terminate and be of no further force and effect upon the earlier of (i) the third (3rd) anniversary date of this Agreement, and (ii) such time that Employee's employment is terminated by the Company without Cause." *Id*. The agreement states that it shall be governed by Delaware law and that any lawsuits brought to resolve any matters arising under the agreement shall be brought in state or federal court in Delaware. *Id.* at ¶ 2(i).

Plaintiff asserts twelve causes of action against defendants, including promissory fraud,

---

[1] Perry also signed, *inter alia*, an "Invention and Non-Disclosure Agreement," a "Heads of Terms re: An Employment Agreement," and a Secured Promissory Note and a Security Agreement. *See* Sadej Decl. Exs. 1-B, 1-C, 2-A, & 2-B. The Invention and Non-Disclosure Agreement contains a choice of law and forum selection clause directing any complaints arising out of the agreement to Delaware; the Heads of Terms agreement does not contain a forum selection clause.

1   misrepresentations violating California securities law, unlawful discharge in violation of public
2   policy and other California laws, defamation, failure to pay severance, and unlawful restraint from
3   engaging in business.[2]  Plaintiff alleges that between September 2018 and April 22, 2019, defendants
4   "had a series of communications with Joshua Perry to recruit Mr. Perry to leave his secure
5   employment elsewhere to become President of Floss Bar, and to forego employment elsewhere."
6   Compl. ¶ 15.  Perry alleges that "[t]o persuade Joshua Perry to accept a salary that was substantially
7   less than what Mr. Perry could earn elsewhere, and to persuade Mr. Perry to leave his former
8   employment and go to work for Floss Bar, these defendants verbally promised to pay Mr. Perry
9   stock options for a 3% equity interest in Floss Bar.  At the time these defendants made this promise,
10  they did not intend to perform it."  *Id.* at ¶ 18.  Perry alleges that defendants have never paid him
11  the promised stock options.  *Id.*

12      Plaintiff also alleges that defendants failed to disclose that "the company was not complying
13  with the law and did not intend to comply with the law."  *Id*. at ¶ 23.  These unlawful practices
14  include "violating important laws that protect dental patients [and] employees, and breaking laws
15  that protect people from having perjury used to convict them."  *Id*. at ¶ 53.  Plaintiff alleges that the
16  company had a practice of forcing out or firing employees who complained about this unlawful
17  conduct.  *Id*. at ¶ 57.  Additionally, plaintiff alleges that (1) defendant Sadej attempted to induce an
18  employee to make false allegations of rape against an unidentified man, *id*. at ¶ 58; (2) Sadej
19  retaliated against employees who complained of various health and safety compliance violations,
20  *id*. at ¶¶ 63, 67; (3) Floss Bar withheld taxes from employee paychecks but did not send the withheld
21  funds to government taxing authorities, *id*. ¶ 70; (4) Floss Bar discriminated against Black
22  employees, and against Black dentists by not awarding them business, *id*. at ¶¶ 71-72; (5) defendants
23  Sadej and Allan created a sexually hostile work environment by being partially undressed at the
24  office, having sex toys in the office, and forcing employees to have meetings alone in Allan's
25  bedroom, *id*. at ¶ 74; and (6) Sadej and Allan used cocaine in the office.  *Id*. at ¶ 76; *see also*

---

[2] Defendants assert that the unlawful restraint cause of action is the only cause of action that arises out of the Non-Competition and Non-Solicitation Agreement, and that plaintiff's other causes of action either involve the Heads of Terms agreement or are based on statutory or common law. Defs' Reply at 8-9 (Dkt. No. 41).  At the hearing, plaintiff's counsel did not dispute this assertion.

United States District Court
Northern District of California

1 *generally* Perry Decl. (Dkt. No. 38).

2       Defendants deny most of plaintiff's allegations. Defendants claim that they put Perry on
3 unpaid leave pending the "outcome of an investigation by the Board of Directors." Answer ¶ 10
4 (Dkt. No. 14). Additionally, defendants assert that the relationship between the parties soured as a
5 result of plaintiff's breaches of the merger agreements, alleging that the state of plaintiff's company
6 was not represented truthfully prior to the merger. Defs' Opp'n at 13 (Dkt. No. 40). Defendants
7 also claim that plaintiff failed to comply with myriad company policies and failed to meet his
8 fiduciary duties to Floss Bar. *Id*.

## II.    Procedural Background

Plaintiff originally filed this action in California Superior Court for the County of San Francisco on July 13, 2020. On August 12, 2020, defendants removed this case to the Northern District of California. On December 4, 2020, defendants filed their motion to transfer venue to the Southern District of New York, and the next day plaintiff filed a motion for a preliminary injunction.

On September 28, 2020, defendants filed an action against plaintiff in the Supreme Court of the State of New York alleging that Perry defaulted on a $300,000 promissory note issued to Perry by Floss Bar. The case is titled *Floss Bar, Inc. v. Joshua David Perry*, Index No. 656513/2020. *See* Defs' Request for Judicial Notice, Ex. A (Dkt. No. 32-1).

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted).

The party moving for transfer must first establish subject matter jurisdiction, personal jurisdiction, and venue in the transferee district. *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009). Next, the moving party must show "the transfer will serve

4

1  the convenience of the parties and witnesses and will promote the interest of justice." *Id*. A "district
2  court has discretion to adjudicate motions for transfer according to an 'individualized, case-by-case
3  consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc*., 211 F.3d 495, 498
4  (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp*., 487 U.S. 22, 29 (1988)). In making the
5  determination, a court may consider: "(1) plaintiff's choice of forum, (2) convenience of the parties,
6  (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum
7  with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the
8  controversy, and (8) the relative court congestion and time of trial in each forum." *Lax v. Toyota
9  Motor Corp*., 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014); *see also Jones*, 211 F.3d at 498 (stating that
10 courts may consider "(1) the location where the relevant agreements were negotiated and executed,
11 (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the
12 respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action
13 in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability
14 of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of
15 access to sources of proof").

## DISCUSSION

18 Defendants contend that the Southern District of New York is a more convenient forum
19 because that is where all of the defendants reside, and relevant third-party witnesses and evidence
20 are located there. Defendants also argue that substantially all of the operative events occurred in
21 the Southern District of New York and that there is little connection between the facts of this case
22 and the Northern District of California. Defendants assert that during his employment, Perry
23 represented that he lived in Acworth, Georgia, not California, and that plaintiff's choice of forum
24 should be given less weight because plaintiff is not a resident of California. Defendants also assert
25 that the Southern District of New York is not inconvenient for plaintiff because he currently lives
26 in Denmark. Defendants also argue that transfer to New York is in the interest of judicial economy
27 and efficiency because of the pending New York state court litigation between Floss Bar and Perry,
28 and because the Southern District of New York is less congested than the Northern District of

California.

**I.      Jurisdiction and Venue**

Defendants must first establish that the Southern District of New York has subject matter jurisdiction and personal jurisdiction, and that the Southern District is a proper venue.

Plaintiff does not dispute that the Southern District of New York would have subject matter jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332. Plaintiff also does not dispute that the Southern District of New York would have personal jurisdiction over the defendants. Sadej and Allan are citizens of and reside in New York, and New York is Floss Bar's principal place of business. *See generally* Notice of Removal (Dkt. No. 1); Sadej Decl. ¶¶ 14-20 (Dkt. No. 31-2). Venue is proper in a district where any defendant resides if all defendants reside in the state where the district is located. 28 U.S.C. § 1391(b)(1). Here, venue is proper in the Southern District of New York because all defendants reside in New York.

Plaintiff contends, however, that venue would not be proper in New York because of the forum selection clauses contained in the Non-Competition & Non-Solicitation Agreement and the Invention & Non-Disclosure Agreement, both of which specify the Delaware courts for lawsuits arising under or relating to those agreements. The Court is not persuaded by this argument. The Supreme Court has instructed that "[t]he structure of the federal venue provisions confirms that they alone define whether venue exists in a given forum[,]" and "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). Thus, the existence of a forum selection clause specifying Delaware does not, on its own, render venue in the Southern District of New York improper.[3]

---

[3] Of course, courts do consider forum selection clauses when evaluating whether a case should be transferred to a venue specified in such a clause. However, here neither party is actually seeking to enforce the forum selection clause (although defendants state that they seek transfer to Delaware as a second-choice alternative to New York). Plaintiff filed suit in California, not Delaware. Plaintiff does not contend that any of his causes of action arise out of or relate to the Invention & Non-Disclosure Agreement, and it appears that only one of the twelve causes of action relates to the Non-Competition & Non-Solicitation Agreement. At the hearing on this matter, plaintiff's counsel stated that the forum selection clause was "not relevant" and not enforceable, and both counsel stated that none of the operative facts underlying the complaint occurred in Delaware. Plaintiff has not cited any authority for the proposition that under these unusual circumstances, the

## II. Convenience and Fairness

### A. Plaintiff's Choice of Forum

"The plaintiff's initial choice of forum usually receives some weight, and is given substantial deference if the plaintiff is a resident of the district in which the action is brought." *Headstart Nursery, Inc. v. Palmeri*, No. 18-CV-03285-NC, 2018 WL 4961664, at *7 (N.D. Cal. Oct. 12, 2018) (internal quotation marks and citation omitted). "However, this deference is substantially diminished in several circumstances, including where (1) 'the plaintiff's venue choice is not its residence,'; (2) the conduct giving rise to the claims occurred in a different forum. . . . ; or (4) plaintiff's choice of forum was plaintiff's second choice." *Burgess v. HP, Inc.*, Case No. 16-CV-04784, 2017 WL 467845, at *6 (N.D. Cal. Feb. 3, 2017) (internal citations omitted); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration"); *Fabus Corp. v. Asiana Exp. Corp.*, No. C-00-3172 PJH, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001) ("The degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence or where the forum chosen lacks a significant connection to the activities alleged in the complaint.").

Defendants argue that the Court should afford little weight to plaintiff's choice of forum because plaintiff does not actually reside in California, the operative facts largely occurred in New York, and the Northern District of California is plaintiff's second choice forum because plaintiff originally filed this lawsuit in state court.

#### 1. Plaintiff's Residence

Plaintiff argues that he is a citizen of California, that he is domiciled in California, and that he "lived, lives and worked in California." Pl's Opp'n at 3 (Dkt. No. 37). Defendants argue that what is relevant for venue purposes is where plaintiff resides, which is different from citizenship or

---

existence of a forum selection clause renders another otherwise appropriate venue improper.

7

1   domicile. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (stating that when
2   evaluating diversity jurisdiction, citizenship is determined by domicile, not residency, and that
3   "[r]esidence is physical, whereas domicile is generally a compound of physical presence plus an
4   intention to make a certain definite place one's permanent abode.") (internal quotation marks and
5   citation omitted). The Court agrees with defendants that the proper focus for the present motion is
6   plaintiff's residence – where he is physically located – not his citizenship or his domicile.

7   The parties dispute where plaintiff resided during his employment with Floss Bar in 2019.
8   Plaintiff has submitted a declaration stating that throughout his employment he resided in San
9   Francisco, *see* Perry Decl. ¶ 1 (Dkt. No. 38), although he also states that he traveled extensively
10  "and was indeed away from my home in San Francisco more than I was home in San Francisco."
11  *Id.* at ¶ 9. Plaintiff has submitted his travel calendar for the year of 2019. *Id.* Ex. 1. It appears that
12  he spent a total of 34 days in San Francisco over the course of the year, that Perry traveled to many
13  different places for business, and that he spent large amounts of time in Copenhagen, Amsterdam,
14  New York City, and Acworth, Georgia. *See generally id.*

15  Defendants claim that throughout 2019, plaintiff represented that he lived in Acworth,
16  Georgia. Defendants have submitted evidence showing that Perry listed an Acworth, Georgia
17  address on the Secured Promissory Note and the Security Agreement, and that throughout Perry's
18  employment Floss Bar issued wage statements with Perry's address listed at the Acworth, Georgia
19  address and Floss Bar remitted payroll taxes to Georgia for the wages earned by Perry. *See* Sadej
20  Decl. Exs. 2-A, 2-B, 3 (Dkt. Nos. 31-7, 31-8, 31-9). Defendants have also submitted a May 15,
21  2019 email from Perry to Floss Bar employees discussing his need for money while traveling. Sadej
22  Decl. Ex. 5 (Dkt. No. 31-11). In that email, Perry discusses his "upcoming travel" and states, *inter
23  alia*, that "I am back in San Francisco Bay Area for business development meetings next week" and
24  "I would very much rather be home in Atlanta with my aging dog than doing this travel, so this is
25  another hardship on me." *Id*.

26  Plaintiff states in his declaration that his sister lives at the Acworth, Georgia address and that
27  because he was traveling so much, he left his two aging dogs with his sister. Perry Decl. ¶ 10 (Dkt.
28  No. 38). He also states that because he was traveling so much, he used his sister's address as his

mailing address, including for payroll purposes. *Id*. at ¶ 11. Perry states that he "stayed only a handful or two of days with my sister" while working for Floss Bar (and also from Thanksgiving to Christmas 2019) and that he told Sadej and Allan that his home was in San Francisco. *Id*. at ¶¶ 12, 18-19. Regarding the May 15, 2019 email, Perry states, "By 'home in Atlanta with my aging dog,' I meant not that I had moved to Atlanta, but I meant home in the United States with my old sick dog, who was in Atlanta with my sister, and/or meant 'home' in the sense that when I stayed with my sister in the Atlanta area and we returned from a trip out, I called this going home." *Id*. at ¶ 22.

Plaintiff acknowledges, however, that since March 15, 2020 he has not physically resided in San Francisco. Perry states in his declaration that he sublet his San Francisco apartment in March 2020 for a year. *Id.* at ¶¶ 26-29. Defendants have submitted two corporate filings for XSite Health Limited signed by Perry in June 2020 in which he listed a Denmark address and stated that he was a resident of the European Economic Area. Scott Decl. Ex. 15 (Dkt No. 41-8). At the hearing, plaintiff's counsel confirmed that Perry has been living abroad since April 2020.

Thus, the record before the Court shows that during 2019, Perry traveled extensively and spent some time in San Francisco and most of the time elsewhere, and that he traveled to New York Georgia, and overseas. More importantly, since March or April of 2020, Perry has lived abroad, and thus since the inception of this lawsuit he has not resided in the Northern District of California. As such, Perry's choice of forum is given considerably less weight in the venue analysis.

### 2. Location of Operative Events

As discussed *supra*, Perry traveled extensively during his employment with Floss Bar and prior to his suspension. Perry conducted some Floss Bar work in California and met with Sadej in San Francisco, and Perry also traveled to New York and met with defendants there. Based on the plaintiff's 2019 calendar, he was in San Francisco over the following dates: March 5–7, May 31-June 5, July 9–23, August 1–5, and August 14–18.

A number of plaintiff's allegations implicate the Heads of Terms re Employment Agreement, as well one cause of action challenging the Non-Competition and Non-Solicitation Agreement. Both agreements were executed on April 22, 2019, while defendants were in New York and plaintiff

was in Amsterdam, and plaintiff states that the negotiations regarding those agreements were handled by his lawyer in Copenhagen and while he was in Amsterdam *See* Sadej Decl. ¶ 3 (Dkt. No. 31-2); Perry Decl. ¶ 7 (Dkt. No. 38). In addition, a number of the allegations of the complaint relate to alleged illegal employment practices of defendants, including acts by Sadej and Allan in the Floss Bar office in New York.

Based upon the above, it appears that while some of the operative events may have occurred in California, many of the operative events occurred in New York or outside of California. The Court finds that this fact also serves to lessen the weight to be afforded plaintiff's choice of forum.[4]

### III. Convenience of the Parties and Witnesses

The Court concludes that this factor weighs in favor of transfer because all defendants reside in the Southern District of New York and plaintiff's only claim of convenience associated with the Northern District of California rests on the premise that he resides here. It is undisputed that he has not resided in the Northern District since at least March 2020 and that he currently resides abroad. As such, the Court finds that the Northern District of California would not actually be a more convenient forum for plaintiff.

The consideration of convenience of witnesses also weighs somewhat in favor of transfer. Perry acknowledges that the witnesses are "scattered" across the country, and that most of the third-party witnesses identified by the parties live on the East Coast, including in New York, Florida, Georgia, South Carolina, Massachusetts, Pennsylvania, and New Jersey. Perry has only identified two third party witnesses who live in the San Francisco Bay Area. Pl's Opp'n at 6-9.

### IV. Other Factors

---

[4] Defendants also cite cases for the proposition that plaintiff's choice of forum can be discounted because the Northern District of California is plaintiff's second choice of forum given that it was removed from state court. *See Mobilitie Mgmt., LLC v. Harkness*, No. 8:16-cv-01747-JLS-KES, 2016 U.S. Dist. LEXIS 194323, at *4 (C.D. Cal. Nov. 28, 2016) (a plaintiff's preference in forum is given less weight if a case is in federal court only because the defendant removed it"); *see also Raisman v. United States Olympic Comm.*, No. 18-cv-02479-BLF, 2018 U.S. Dist. LEXIS 198132, at *10-11 (N.D. Cal. Nov. 20, 2018).

The Court concludes that the remaining factors are largely neutral. It appears most evidence is electronic and thus available in either venue. Defendants make much of the fact that a number of plaintiff's allegations involve Sadej and Allan's New York apartment – which was used as Floss Bar's office for a time – and defendants assert that a jury may want to view the apartment. The Court is not persuaded that this possibility is a strong one.

With regard to the familiarity of each forum with the applicable law, the Court notes that the parties dispute whether California law applies to Perry's claims, or whether different state law (such as that of Delaware, Georgia, or New York) applies. If Perry's claims are adjudicated under California law, it is true that the Northern District of California would likely be more familiar with the controlling law. However, all federal district courts are able to apply law from states from other jurisdictions. Thus, this factor weighs slightly against transfer, but not much.

The local interest in the controversy weighs slightly in favor of transfer. Both parties claim that their choice of forum has a local interest in the case as a result of the courts' interest in protecting the rights of those residing in the forum. However, the Court finds that New York has a greater interest in the controversy because Floss Bar is headquartered in New York, defendants Sadej and Allan are New York residents, and much of the events giving rise to plaintiff's claims occurred in New York, while Perry does not currently reside in California.

Finally, the relative congestion and time of trial in each forum is about the same and thus this factor is neutral.

## CONCLUSION

For the foregoing reasons, the Court concludes that transfer to the Southern District of New York is appropriate pursuant to 28 U.S.C. § 1404(a), and transfers this action accordingly. Because this case is being transferred, the Court finds that any determinations regarding the merits of plaintiff's claims should be made by the transferee court. Accordingly, the Court DENIES plaintiff's motion for a preliminary injunction without prejudice to renewal in the transferee court.

**IT IS SO ORDERED**.

Dated: January 22, 2021

SUSAN ILLSTON
United States District Judge